# FILED

JUN 30 2014

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

**NOT FOR PUBLICATION**

**UNITED STATES BANKRUPTCY APPELLATE PANEL**

**OF THE NINTH CIRCUIT**

| | |
|---|---|
| In re: ) | BAP No.   EC-13-1277-KuJuTa |
| ) | |
| GREGORY FREDRICK WACKERMAN, ) | Bk. No.   12-14331 |
| ) | |
| Debtor. ) | Adv. No.   12-01142 |
| _____ ) | |
| GREGORY FREDRICK WACKERMAN, ) | |
| ) | |
| Appellant, ) | |
| ) | |
| v. ) | **MEMORANDUM**[*] |
| ) | |
| BANK OF AMERICA, N.A.; U.S. ) | |
| BANK NATIONAL ASSOCIATION; ) | |
| RECONTRUST COMPANY, N.A., ) | |
| ) | |
| Appellees. ) | |
| _____ ) | |

Argued and Submitted on May 15, 2014
at Sacramento, California

Filed – June 30, 2014

Appeal from the United States Bankruptcy Court
for the Eastern District of California

Honorable Fredrick E. Clement, Bankruptcy Judge, Presiding

---

Appearances:     Jerry R. Lowe argued for appellant; Matthew James
                 Brady of Reed Smith, LLP argued for appellees.

---

Before: KURTZ, JURY and TAYLOR, Bankruptcy Judges.

---

[*]This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8013-1.

**INTRODUCTION**

Debtor Gregory Fredrick Wackerman appeals from a summary judgment ruling in favor of defendants Bank of America, N.A., U.S. Bank National Association and ReconTrust Company, N.A. Wackerman also appeals from the denial of his motion for reconsideration. In both instances, Wackerman's arguments on appeal boil down to whether the bankruptcy court should have given him further opportunities to obtain and present evidence to support his positions.

In the first instance, Wackerman in essence argues that the bankruptcy court should have continued the summary judgment proceedings so that he could have a further opportunity to obtain and present evidence on the dispositive issue: the timing of defendants' foreclosure sale. But Wackerman never requested such a continuance. We will not reverse the bankruptcy court for not granting relief Wackerman never requested.

In the second instance, Wackerman argues that the bankruptcy court should have given him a second chance to present sufficient evidence to support his reconsideration motion. But Wackerman did not ask for this second chance until the hearing on the reconsideration motion was in progress, and after the court had announced its tentative ruling to deny the reconsideration motion. In denying Wackerman's request, the bankruptcy court duly and properly exercised its discretion. Even though another judge may have decided the matter differently, the bankruptcy court applied the correct legal standard and did not make any clearly erroneous findings of fact. Accordingly, we AFFIRM.

2

**FACTS**

The relevant facts are largely undisputed. On May 14, 2012, somewhere between 10:00 a.m. and 10:30 a.m., defendants conducted a nonjudicial foreclosure sale of Wackerman's residence located in Mariposa, California. That same morning, at 10:11 a.m., Wackerman commenced his chapter 13[1] bankruptcy case. Wackerman then filed an adversary complaint alleging that the sale violated the automatic stay. The complaint sought a declaratory judgment that the sale was void, as well as compensatory damages, punitive damages and attorney's fees.

After defendants answered the complaint, the parties submitted a joint discovery plan, which the court adopted as an order of the court by order entered October 17, 2012.[2] That order set a discovery cutoff date of January 15, 2013. On January 31, 2013, after the close of discovery, defendants filed their summary judgment motion. Defendants asserted that they were entitled to summary judgment because the foreclosure sale was completed before Wackerman filed his bankruptcy case, so the automatic stay was not yet in effect at the time the sale

---

[1]Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and all Rule references are to the Federal Rules of Bankruptcy Procedure. All Civil Rule references are to the Federal Rules of Civil Procedure.

[2]The parties did not provide us with copies of their joint discovery plan or of the bankruptcy court's October 17, 2012 order. However, we were able to obtain copies of these and other documents from the bankruptcy court's docket. We can take judicial notice of items in the bankruptcy court record. See O'Rourke v. Seaboard Sur. Co. (In re E.R. Fegert, Inc.), 887 F.2d 955, 957-58 (9th Cir. 1989).

3

occurred. As a result, defendants reasoned, none of Wackerman's claims for relief had any merit, because they were all premised on the allegation that the sale violated the automatic stay.

In support of their claim that the sale occurred before the bankruptcy case was filed, defendants relied on the declaration of Mary Lou McKeighan filed in support of the summary judgment motion ("McKeighan MSJ Declaration"). McKeighan declared that she served as auctioneer at the sale and that, at the conclusion of the sale, she checked the time on her mobile phone and recorded that time onto a sale log. According to McKeighan, she routinely takes notes and records them onto a sale log immediately after the conclusion of each sale she conducts. A copy of the sale log from the sale of Wackerman's residence is attached as an exhibit to the McKeighan MSJ Declaration and indicates under the heading "sale results" that the residence was sold "back to beneficiary" at "10:06". Based on her sale log notes, McKeighan declared that the sale of Wackerman's residence concluded at 10:06 a.m. on May 14, 2012.

Wackerman filed a half-page opposition to the summary judgment motion. Wackerman claimed that the precise time of the sale, and whether it concluded before or after the bankruptcy filing, was a genuine issue of material fact. But Wackerman did not submit any evidence in support of this claim. Instead, Wackerman asserted that the bankruptcy court should deny the summary judgment motion and reopen discovery because defendants had not disclosed to Wackerman the precise information contained in the McKeighan MSJ Declaration, nor had they disclosed the sale log from the sale of Wackerman's residence.

4

In light of Wackerman's opposition, the bankruptcy court entered an order continuing the summary judgment hearing from February 28, 2013 to March 28, 2013. The order directed the parties to file supplemental declarations explaining whether defendants had made the requisite disclosures under Civil Rule 26(a)(1) regarding McKeighan and regarding the sale log and, if not, what were the proper remedies for the nondisclosure.

In accordance with the court's order, Wackerman's counsel filed a declaration in which he admitted that defendants had disclosed McKeighan's identity, her contact information and a copy of a different declaration by McKeighan – her September 2012 declaration filed in the main bankruptcy case in support of defendants' motion for relief from stay ("McKeighan MRS Declaration").

Even so, Wackerman argued that defendants also should have disclosed the sale log and the contents of the McKeighan MSJ Declaration. According to Wackerman, the appropriate remedy for this failure to disclose was denial of the summary judgment motion and the reopening of discovery so that Wackerman could take McKeighan's deposition.

In addition, Wackerman filed his own declaration in which he stated that he had been diligently searching for a man he met on the date of the sale outside the building where the sale occurred. Even though Wackerman was not able to identify this man by name and did not know precisely what the man would say if asked, Wackerman believed the man would testify that the sale occurred several minutes later than as declared by McKeighan. In relevant part, Wackerman declared as follows:

> Before the auction began, I spoke with a gentleman who represented to me that he was attending the auction to bid on my home. I told him that I was trying to file bankruptcy to stop the sale. He went inside the building where the auction was being conducted and I stayed outside to discuss the status of the bankruptcy filing with my attorney Jerry R. Lowe. I spoke with the gentleman as he was leaving and I asked him whether my house sold. He indicated to me that he did not bid on it because I was filing bankruptcy, but that it had sold. As a result of my conversation with him, I have reason to believe that the sale of the home took place closer to 10:30 a.m. I have been diligently attempting to locate this gentleman again so that my attorney may discuss the issue of when the sale actually happened.

Wackerman Declaration (March 14, 2013) at ¶ 2.

Meanwhile, defendants' counsel filed a declaration in which he claimed that any omission in defendants' initial disclosure was harmless because Wackerman's counsel had admitted to him that he was aware of the McKeighan MRS Declaration in which McKeighan had similarly testified that the sale occurred at 10:06 a.m. on May 14, 2012. As for the sale log, defendants' counsel testified that he was not aware of its existence until two days before he filed the summary judgment motion. Based on these facts, defendants contended (1) that Wackerman knew from the contents of the McKeighan MRS Declaration that McKeighan would testify that the sale occurred at 10:06 a.m. on May 14, 2012, (2) that Wackerman had ample opportunity before the discovery cutoff to take McKeighan's deposition but chose not to do so, and (3) that discovery should not be reopened and the summary judgment motion should be granted.

The bankruptcy court held a hearing on the summary judgment

6

motion on March 28, 2013.[3] Defendant's counsel appeared at the hearing, but no one appeared on behalf of Wackerman. At the hearing, the court adopted its tentative ruling as its final ruling. As set forth in that ruling, the bankruptcy court agreed with all of defendants' contentions. It further ruled that defendants had adequately disclosed McKeighan's identity and contact information and that Civil Rule 26(a) did not require defendants to disclose the contents of McKeighan's anticipated summary judgment declaration testimony.

As for the sale log, the court credited the declaration testimony of defendants' counsel indicating that defendants were unaware of the sale log until a couple of days before the filing of the summary judgment motion. According to the court, prior to filing their summary judgment motion, defendants did not have possession, custody or control of the sale log, so they were not obligated to provide Wackerman with a copy of it as part of their initial disclosures or as part of their continuing duty to update their disclosures. Based on McKeighan's testimony regarding the nature of the sale log, the nature of her role in the sale, and the nature of her affiliation with LPS Agency Sales & Posting, Inc., the company that conducted the sale, the court concluded that the sale log was an internal document that McKeighan kept for her own records and that the relationship between McKeighan and defendants was too attenuated for the court to conclude that

---

[3]The parties have not provided us with a copy of the transcript from the March 28, 2013 hearing. However, we were able to obtain a copy of this transcript from the bankruptcy court's docket. See In re E.R. Fegert, Inc., 887 F.2d at 957-58.

7

defendants had control over the document for disclosure purposes.

With respect to Wackerman's declaration, the court determined that the portions of the declaration which arguably could support Wackerman's allegation that the sale occurred after his bankruptcy filing were all inadmissible hearsay or were based on Wackerman's lack of personal knowledge. Therefore, the court explained, Wackerman had failed to present any admissible evidence to counter defendants' evidence demonstrating that the sale concluded before the bankruptcy filing. Hence, the bankruptcy court concluded that defendants had met their summary judgment burden, Wackerman had not met his summary judgment burden, and defendants were entitled to summary judgment.

On April 16, 2013, the day after the court entered summary judgment in favor of defendants, Wackerman filed a motion for reconsideration based on his receipt of newly discovered evidence. This newly discovered evidence consisted of the declaration testimony of Daniel McMonegal. Contrary to McKeighan's testimony that the sale concluded at 10:06 a.m., McMonegal declared that the sale concluded at approximately 10:20 a.m. According to McMonegal, he attended the sale of Wackerman's residence because he was interested in potentially bidding for the property. McMonegal indicated that, while he was at the sale, he was very conscious of the time because he was scheduled to pick up his girlfriend at 10:30 a.m., and he did not want to be late. As McMonegal put it, it was roughly a five minute drive to the place where he was supposed to pick up his girlfriend, and he left the building where the sale was taking place as soon as the sale concluded. McMonegal further declared

8

that the sale did not begin promptly at 10:00 a.m. as scheduled but rather was slightly delayed. Consequently, he stated, he was checking his phone regularly to ensure he would be on time to pick up his girlfriend.

Wackerman also filed with his reconsideration motion his own declaration. In his declaration, he attempted to establish that he was diligent in seeking this newly discovered evidence, by declaring as follows:

> Prior to the hearing on the motion for summary judgment, I made diligent efforts to locate a witness who was present at the May 14, 2012, foreclosure hearing. My efforts included, but were not limited to, asking people I knew, and other persons who I believed lived in Mariposa, California, if they were present at the foreclosure auction or knew of anyone who was present at the foreclosure auction. On or about April 6, 2013, Daniel McMonegal, came forward, and informed me that he was present at the foreclosure sale.

Wackerman Decl. (April 30, 2013) at ¶ 2.

The bankruptcy court held a hearing on the reconsideration motion on May 31, 2013. In the court's tentative ruling, which it adopted as its final ruling, the court acknowledged that Wackerman's newly discovered evidence, if timely presented to the court in conjunction with Wackerman's opposition to the summary judgment motion, might have supported Wackerman's factual position regarding the time of sale sufficient to establish the time of sale as a genuine issue of material fact that would have prevented the court from entering summary judgment in favor of defendants. However, the court was not persuaded that Wackerman had adequately established that he had exercised reasonable diligence in locating McMonegal and obtaining his declaration testimony.

9

At the hearing, Wackerman orally requested that the court give him the opportunity to present additional testimony regarding his diligence, but the court declined to do so. According to the court, Wackerman had already been given ample opportunity to make his case on the diligence issue, and the court was not going to reopen the record to permit him to attempt to cure the insufficiency of his evidence regarding diligence. In the bankruptcy court's own words:

> The problem here is this came up for summary judgment, and you knew that was coming, and then there was a motion to [reconsider] that, so – you've known all along, so we're not going to take supplemental testimony. You've had a couple of bites at this apple.

> You need to make the argument on the record you've got 'cause I'm not going to add – I'm not going to supplement the record. This would be the third time we've come around to this.

Hr'g Trans. (May 31, 2013) at 4:5-13.

On June 3, 2013, the bankruptcy court entered an order denying Wackerman's reconsideration motion, and on June 11, 2013, Wackerman timely filed a notice of appeal seeking review of the denial of the reconsideration motion as well as the court's April 16, 2013 summary judgment in favor of defendants.

**JURISDICTION**

The bankruptcy court had jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(A). We have jurisdiction under 28 U.S.C. § 158.

**ISSUES**

1. Did the bankruptcy court correctly determine that defendants were entitled to summary judgment?

2. Did the bankruptcy court abuse its discretion by

10

granting summary judgment without giving Wackerman more time to identify and locate a third party witness to the sale?

3. Was the bankruptcy court's finding regarding defendants' lack of control over the sale log clearly erroneous?

4. Did the bankruptcy court abuse its discretion by denying Wackerman's reconsideration motion?

5. Did the bankruptcy court abuse its discretion by not giving Wackerman another opportunity to establish that he was reasonably diligent in seeking and obtaining his newly discovered evidence?

**STANDARDS OF REVIEW**

We review the bankruptcy court's grant of summary judgment de novo. Boyajian v. New Falls Corp. (In re Boyajian), 564 F.3d 1088, 1090 (9th Cir. 2009); Lopez v. Emergency Serv. Restoration, Inc. (In re Lopez), 367 B.R. 99, 103 (9th Cir. BAP 2007).

We review the bankruptcy court's denial of an extension of time to respond to a summary judgment motion for an abuse of discretion. Ahanchian v. Xenon Pictures, Inc., 624 F.3d 1253, 1258 (9th Cir. 2010). We similarly review for an abuse of discretion the bankruptcy court's denial of a reconsideration motion. First Ave. W. Bldg. LLC v. James (In re OneCast Media, Inc.), 439 F.3d 558, 561 (9th Cir. 2006); Heritage Pac. Fin., LLC v. Montano (In re Montano), 501 B.R. 96, 105 (9th Cir. BAP 2013).

Under the abuse of discretion standard of review, we apply a two-part test. First, we "determine de novo whether the [bankruptcy] court identified the correct legal rule to apply to the relief requested." United States v. Hinkson, 585 F.3d 1247, 1262 (9th Cir. 2009) (en banc). And, second, if the bankruptcy

11

court identified the correct legal rule, we then determine under the clearly erroneous standard whether its factual findings and its application of the facts to the relevant law were: "(1) illogical, (2) implausible, or (3) without support in inferences that may be drawn from the facts in the record." Id. (internal quotation marks omitted).

Whether the sale log was in defendants' control for discovery and disclosure purposes was a question of fact. See, e.g., Nosal v. Granite Park LLC, 269 F.R.D. 284, 290-91 (S.D.N.Y. 2010); DL v. District of Columbia, 251 F.R.D. 38, 46 (D.D.C. 2008). We review the bankruptcy court's control finding, and all other factual findings, under the clearly erroneous standard, which requires us to consider whether those findings were "illogical, implausible, or without support in the record." See Retz v. Samson (In re Retz), 606 F.3d 1189, 1196 (9th Cir. 2010).

**DISCUSSION**

Summary judgment is appropriate when there are no genuine issues of material fact and when viewing the evidence most favorably to the non-moving party, the movant is entitled to prevail as a matter of law. Civil Rule 56 (made applicable in adversary proceedings by Rule 7056); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). Material facts that would preclude summary judgment are those which, under applicable substantive law, may affect the outcome of the case. The substantive law determines which facts are material. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

Civil Rule 56 "mandates" summary judgment when, after adequate opportunity for discovery, the adverse party fails to

12

present evidence in response to a summary judgment motion sufficient to establish the existence of an essential element of that party's case, on which that party would bear the burden of proof at trial. Celotex Corp., 477 U.S. at 322. As the Supreme Court explained, "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 322-23.

Here, Wackerman as the plaintiff would have the burden of proof at trial to establish all of the elements supporting his claim that defendants violated the automatic stay. See Fernandez v. G.E. Capital Mortg. Servs. (In re Fernandez), 227 B.R. 174, 180-81 (9th Cir. BAP 1998). This burden would require Wackerman to present evidence at trial that the sale occurred after Wackerman filed his bankruptcy case. Before the bankruptcy case was filed, there was no automatic stay to violate. See Hillis Motors, Inc. v. Hawaii Auto. Dealers' Ass'n, 997 F.2d 581, 585 (9th Cir. 1993) (stating that automatic stay arises upon the commencement of the bankruptcy case); Pierce v. Carson (In re Rader), 488 B.R. 406, 411 (9th Cir. BAP 2013) (same).

Wackerman has not disputed that the critical event in terms of the foreclosure was the completion of the auction sale on May 14, 2012. Under California law, the recordation of the trustee's deed of sale relates back to the date the auction sale actually occurred so long as the deed is recorded within fifteen days of the sale. See Cal. Civ. Code § 2924h(c); Bebensee-Wong v. Fed. Nat'l Mortg. Ass'n (In re Bebensee-Wong), 248 B.R. 820, 822-823 (9th Cir. BAP 2000). Wackerman also has not disputed

13

that ReconTrust recorded the trustee's deed on May 29, 2012, within fifteen days of the sale.

Instead, Wackerman contends that the time of the actual sale was a genuine issue of material fact. According to Wackerman, his declaration in opposition to the summary judgment motion was sufficient to demonstrate the existence of a genuine issue of material fact concerning the time of the sale. We disagree. For summary judgment purposes, "[a]n issue is 'genuine' only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party." Far Out Productions, Inc. v. Oskar, 247 F.3d 986, 992 (9th Cir. 2001). The bankruptcy court here determined that all of the statements in Wackerman's declaration regarding the time of sale were inadmissible. Wackerman has not challenged on appeal this evidentiary ruling, nor does there appear to be any legitimate basis for doing so. On their face, Wackerman's statements regarding what a third party told him about the time of sale are hearsay. Moreover, Wackerman effectively conceded that he had no personal knowledge as to the precise time of sale because he admitted that he did not witness the sale.

Consequently, Wackerman presented no admissible evidence regarding the time of sale. In contrast, defendants presented admissible evidence on this issue in the form of the McKeighan MSJ Declaration, in which McKeighan declared that the sale occurred at 10:06 a.m. Given this uncontroverted evidence regarding the time of sale, no trier of fact reasonably could have found in Wackerman's favor on the sale timing issue. As a result, we reject as meritless Wackerman's argument that the sale

14

timing issue was a genuine issue of material fact that should have prevented the court from granting summary judgment.

Alternately, Wackerman argues on appeal that the bankruptcy court should have given him more time to obtain admissible evidence in support of his position on the timing issue. But there is a fatal flaw in this argument. Wackerman never requested, either orally or in writing, a continuance of the summary judgment proceedings in order to afford him additional time to find his unidentified third-party witness regarding the sale timing issue.

We have carefully reviewed all of Wackerman's submissions prior to the time the court ruled on defendants' summary judgment motion, and he simply did not ask for any such continuance. We do not need to consider issues raised for the first time on appeal, where the trial court had no opportunity to consider them. See United Student Aid Funds, Inc. v. Espinosa, 559 U.S. 260, 270 n.9 (2010) ("We need not settle that question, however, because the parties did not raise it in the courts below."); Scovis v. Henrichsen (In re Scovis), 249 F.3d 975, 984 (9th Cir. 2001)(stating court will not consider issue raised for the first time on appeal absent exceptional circumstances). Wackerman has not demonstrated the existence of any exceptional circumstances that would justify our consideration of this issue in the first instance.

Even if we were to consider the merits of Wackerman's argument regarding a continuance of the summary judgment proceedings, we would not reverse. Absent a request for continuance of the proceedings from Wackerman, it would be

15

inappropriate for us to hold that the bankruptcy court abused its discretion by not granting such a continuance. See Johnson v. Reilly, 349 F.3d 1149, 1156 (9th Cir. 2003).

Although Wackerman did not ask for a continuance of the summary judgment proceedings, Wackerman did argue in the bankruptcy court that defendants did not fully comply with the disclosure requirements set forth in Civil Rule 26(a)(1) and (e) (made applicable in adversary proceedings by Rule 7026). Because defendants did not fully comply with these requirements, Wackerman asserted, denial of the summary judgment motion and the reopening of discovery was appropriate.

On appeal, Wackerman has renewed this argument, focusing on the fact that defendants did not disclose the sale log before they filed their summary judgment motion. According to Wackerman, the court erred when it found that defendants did not have "possession, custody or control" of the sale log for disclosure purposes. See Civil Rule 26(a)(1)(a)(ii) (requiring parties to disclose all documents within their "possession, custody or control" which they may use to support their claims or defenses). As Wackerman puts it, the evidence presented in the summary judgment proceedings established that McKeighan and LPS were defendants' agents and, consequently, defendants effectively controlled the sale log for disclosure and discovery purposes. See United States v. Int'l Union of Petrol. & Indus. Workers, 870 F.2d 1450, 1452 (9th Cir. 1989) ("Control is defined as the legal right to obtain documents upon demand.").

The bankruptcy court disagreed with Wackerman. It specifically found, based on McKeighan's declaration testimony,

16

that she kept the sale log for her own internal records and that her business relationship with defendants was too attenuated for the court to find that defendants had the legal right to require McKeighan to turn over the sale log. Wackerman has not persuaded us that these findings were illogical, implausible or without support in the record. Thus, they were not clearly erroneous. See In re Retz, 606 F.3d at 1196. Because Wackerman has failed to demonstrate reversible error in the bankruptcy court's determination that defendants complied with Civil Rule 26(a)(1) and (e), we must reject Wackerman's argument regarding defendants' disclosures.

Wackerman also challenges on appeal the bankruptcy court's denial of his reconsideration motion. When, as here, the party seeking relief from a judgment or order files a reconsideration motion within fourteen days of entry of that judgment or order, we review the reconsideration motion as a motion for relief from judgment under Rule 9023. See In re Montano, 501 B.R. at 112. Rule 9023 incorporates Civil Rule 59(e), and the same standards apply to both rules. Id. In order to justify relief under Rule 9023, the movant must show: "(a) newly discovered evidence, (b) the court committed clear error or made an initial decision that was manifestly unjust, or (c) an intervening change in controlling law." Id. (citing Duarte v. Bardales, 526 F.3d 563, 567 (9th Cir. 2008)).

In this case, Wackerman sought to present newly discovered evidence to the court. To support its request for relief based on newly discovered evidence, Wackerman needed to establish: "that [he] discovered the evidence after [the summary judgment

17

proceedings], that [he] could not have discovered the evidence sooner through the exercise of reasonable diligence, and that the new evidence is of such magnitude that it would likely have changed the outcome of the case." Far Out Productions, Inc., 247 F.3d at 998 (citing Defenders of Wildlife v. Bernal, 204 F.3d 920, 929 (9th Cir. 2000)).

The bankruptcy court held that Wackerman had satisfied the first and third elements for relief from judgment based on newly discovered evidence. As the bankruptcy court found, McMonegal's declaration testimony, obtained by Wackerman shortly after the conclusion of the summary judgment proceedings, likely would have caused the court to conclude that a genuine issue of material fact existed regarding the time of sale, had Wackerman timely presented McMonegal's declaration testimony while the summary judgment proceedings were still pending.

However, the bankruptcy court also found that Wackerman had failed to establish the second element for relief based on newly discovered evidence: that he had exercised reasonable diligence in finding McMonegal and obtaining his testimony. Wackerman has not offered any real explanation why this finding was illogical, implausible or without support in the record. Even though Wackerman knew from the outset of his adversary proceeding, an adversary proceeding he commenced in August 2012, that he would need to prove that the sale concluded after the bankruptcy case was filed, and even though he knew there were third party witnesses to the sale but did not know their names, all he was able to muster in the way of proof of his diligence in attempting to identify and locate witnesses before the April 2013 conclusion

18

of the summary judgment proceedings was the following three-sentence statement:

> Prior to the hearing on the motion for summary judgment, I made diligent efforts to locate a witness who was present at the May 14, 2012, foreclosure hearing. My efforts included, but were not limited to, asking people I knew, and other persons who I believed lived in Mariposa, California, if they were present at the foreclosure auction or knew of anyone who was present at the foreclosure auction. On or about April 6, 2013, Daniel McMonegal, came forward, and informed me that he was present at the foreclosure sale.

Wackerman Dec. (April 30, 2013) at ¶ 2. As the bankruptcy court found, this evidence was conclusory and raised more questions than it answered regarding Wackerman's diligence. For instance, the bankruptcy court explained, Wackerman's testimony did not demonstrate when Wackerman began looking for witnesses, nor did Wackerman specify how or when he communicated with others regarding his inquiry. At bottom, the court was left with no real idea of the extent and timing of Wackerman's efforts to identify and locate witnesses. Under these circumstances, we cannot hold as clearly erroneous the bankruptcy court's finding that Wackerman failed to satisfy the reasonable diligence element for presenting newly discovered evidence.

Wackerman alternately argues that the bankruptcy court should have granted his request for another chance to present evidence regarding his diligence, a request he orally made at the time of the reconsideration motion hearing, after the bankruptcy court had announced its tentative ruling that it was prepared to deny the reconsideration motion because Wackerman had not demonstrated reasonable diligence.

Neither in the bankruptcy court nor on appeal has Wackerman

19

cited any legal authority supporting his claim that the bankruptcy court should have granted him another chance to present evidence. Wackerman merely opines that too much was at stake for the bankruptcy court to deny him this additional opportunity.

The record supports the bankruptcy court's decision to not give Wackerman another chance to present evidence. The extent of Wackerman's diligence was an issue where the evidence was readily available to Wackerman without the need to seek out information or documents from third parties. And yet in support of his diligence, Wackerman only was able to muster three conclusory sentences, as set forth in his April 30, 2013 declaration. Only after the court indicated that it was prepared to rule against him on this issue did Wackerman for the first time ask for another chance to submit evidence of diligence. And yet he gave no indication why he could not and did not provide more evidence in his April 30, 2013 declaration.

Federal courts have inherent authority and broad discretion to manage cases taking place before them and to structure proceedings in a manner that is consistent with the fair, efficient and expedient administration of justice. See U.S. v. W.R. Grace, 526 F.3d 499, 509-10 (9th Cir. 2008) (en banc); S. Cal. Edison Co. v. Lynch, 307 F.3d 794, 807 (9th Cir. 2002). Here, the bankruptcy court in essence found that Wackerman knew and understood that his diligence was at issue for purposes of his reconsideration motion and that Wackerman already had been given sufficient opportunity to present evidence on this point. We cannot say that this finding was illogical, implausible or

without support in the record.[4]  Nor can we say that the court abused its discretion in denying Wackerman another chance to present evidence on the diligence issue.

## CONCLUSION

For the reasons set forth above, we AFFIRM the bankruptcy court's grant of summary judgment in favor of defendants and its denial of Wackerman's reconsideration motion.

[4]At first blush, the bankruptcy court appears to have mis-spoken when it commented on Wackerman's prior opportunities to address the issue of his diligence.  The bankruptcy court commented that Wackerman had been given two prior opportunities to address this issue.  Strictly speaking, Wackerman only had one true opportunity to address this issue: in his April 30, 2013 declaration.  Before Wackerman filed his April 2013 reconsideration motion, his diligence in identifying and locating McMonegal was not at issue.

Nonetheless, when the court's comments are given a fair reading in the context of the entire record, we think all the court really was trying to say was the following: (1) that Wackerman filed two declarations during the combined course of the summary judgment motion proceedings and the reconsideration motion proceedings, both of which discussed Wackerman's efforts to identify and locate third-party witnesses to the sale; (2) neither of these declarations gave the court any real insight into the extent of Wackerman's efforts; and (3) after having announced its intention to rule against Wackerman's reconsideration motion based on his inadequate demonstration of reasonable diligence, the court was not obliged to give Wackerman another chance to present evidence regarding his diligence.

21